Teague Westrope
Liz Forster
AVA Law Group, PLLC
2718 Montana Avenue, Ste. 220
Billings, Montana 59101
(406) 295-8689
teague.westrope@avalaw.com
liz.forster@avalaw.com

Adam J. Kress, Esq.
(MN ID #0397289)
Johnson Becker, PLLC
*Pro Hac Vice to be filed*
444 Cedar Street, Suite 1800
St. Paul, MN 55101
(612) 436-1800
akress@johnsonbecker.com

*Attorneys for Plaintiff*

**FILED**

1/13/2025

Clerk, U.S. District Court
District of Montana
Billings Division

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA

| | |
|---|---|
| JASON MILLER, ) | |
| ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action File No.: |
| v. ) | |
| ) | CV-25-09-BLG-TJC |
| SUNBEAM PRODUCTS, INC., and ) | |
| NEWELL BRANDS, INC. ) | |
| ) | |
| Defendants. ) | |
| ) | |

## COMPLAINT FOR DAMAGES AND JURY TRIAL DEMAND

Plaintiff Jason Miller, by and through his attorneys, **JOHNSON BECKER, PLLC** and **AVA LAW GROUP, PLLC**, upon information and belief, at all times hereinafter mentioned, alleges as follows:

1

**NATURE OF THE CASE**

1.      Defendants Sunbeam Products. Inc. and Newell Brands, Inc. (hereinafter collectively referred to as "Defendants") design, manufacture, market, import, distribute and sell a wide-range of consumer products, including the subject "Crock-Pot Express Crock Multicooker," which specifically includes the Model Number SCCPPC100-V1 (hereinafter "Pressure Cooker(s)").

2.      Defendants tout that their Pressure Cookers are designed with "safety in mind," which include supposed "safety measures" such as "safety sensors" that purport to keep the lid from being opened while the unit is under pressure. *See* Ex. A, Sunbeam Products, Inc. 10 Qt Easy Release Pressure Cooker, at 10.

3.      Despite Defendants' claims of "safety," they designed, manufactured, marketed, imported, distributed, and sold, both directly and through third-party retailers, a product that suffers from serious and dangerous defects. Said defects cause significant risk of bodily harm and injury to their consumers.

4.      Specifically, said defects manifest themselves when, despite Defendants' statements, the lid of the Pressure Cooker is removable when there is built-up pressure, heat, and steam still inside the unit. When the lid is removed under such circumstances, the pressure trapped within the unit causes the scalding hot contents to be projected from the unit and into the surrounding area, including onto unsuspecting consumers, their families, and other bystanders. Plaintiff here was able to remove the lid while his Pressure Cooker was still pressurized , causing him serious and substantial bodily injuries and damages.

5.      Defendants knew or should have known of these defects but has nevertheless put profit ahead of safety by continuing to sell their Pressure Cookers to consumers, failing to warn

said consumers of the serious risks posed by the defects, and failing to timely recall the dangerously defective Pressure Cookers regardless of the risk of significant injuries to Plaintiff and consumers like him.

6.    Defendants ignored and/or concealed their knowledge of these defects in their Pressure Cookers from Plaintiff, as well as the public in general, in order to continue generating a profit from the sale of the Pressure Cookers, demonstrating a callous, reckless, willful, depraved indifference to the health, safety, and welfare of Plaintiff and consumers like him.

7.    As a direct and proximate result of Defendants' conduct, Plaintiff incurred significant and painful bodily injuries, medical expenses, physical pain, mental anguish, and diminished enjoyment of life.

## **PLAINTIFF JASON MILLER**

8.    Plaintiff is a resident and citizen of Black Eagle, Montana.

9.    On or about January 25, 2022, Plaintiff suffered serious and substantial burn injuries as the direct and proximate result of the Pressure Cooker's lid being able to be opened while the Pressure Cooker was still under pressure, during the normal, directed use of the Pressure Cooker, allowing their scalding hot contents to be forcefully ejected from the Pressure Cooker and onto Plaintiff. The incident occurred as a result of the failure of the Pressure Cooker's supposed "safety measures," which purport to keep the consumer safe while using the Pressure Cooker. In addition, the incident occurred as the result of Defendants' failure to redesign the Pressure Cooker, despite the existence of economical, safer alternative designs.

**DEFENDANTS SUNBEAM PRODUCTS, INC. & NEWELL BRANDS, INC.**

10.    Defendants design, manufacture, market, import, distribute, and sell a variety of consumer products including pressure cookers, toasters, panini makers, and mixers. *See generally*, https://www.sunbeam.com/

11.    Defendants claim that through their "cutting-edge innovation and intelligent design" they have been "simplifying the lives of everyday people" for "over 100 years." *See* https://www.newellbrands.com/our-brands/sunbeam.

12.    Defendant Sunbeam Products, Inc. is a Delaware Corporation with its registered place of business at 6655 Peachtree Dunwoody Road, Atlanta, Georgia 30328, and its principal place of business located at 2381 Executive Center Drive, Boca Raton, Florida 33431. At all relevant times, Defendant Sunbeam. substantially participated in the distribution, design, manufacture, and sale of the subject pressure cooker, which caused Plaintiff's injuries and damages. Defendant Sunbeam maintains a registered agent to transact business in Georgia where it may be served with Summons and the Complaint, Corporation Service Company, 2 Sun Court, Suite 400, Peachtree Corners, Gwinnett County, Georgia 30092.

13.    Defendant Newell Brands, Inc. is a Delaware Corporation with its principal place of business located at 6655 Peachtree Dunwoody Road, Atlanta, Georgia 30328. At all relevant times, Defendant Newell Brands substantially participated in the distribution, design, manufacture, and sale of the subject pressure cooker, which caused Plaintiff's injuries and damages.  Defendant Newell maintains a registered agent to transact business in Georgia where it may be served with Summons and the Complaint, Corporation Service Company, 2 Sun Court, Suite 400, Peachtree Corners, Gwinnett County, Georgia 30092.

4

**JURISDICTION AND VENUE**

14.    This Court has subject matter jurisdiction over this case pursuant to diversity jurisdiction prescribed by 28 U.S.C. § 1332 because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and there is complete diversity between the parties.

15.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because all or a substantial part of the events or omissions giving rise to this claim occurred in this district.

**FACTUAL BACKGROUND**

16.    Defendants are engaged in the business of designing, manufacturing, warranting, marketing, importing, distributing, and selling the Pressure Cookers at issue in this litigation.

17.    According to the Owner's Manual accompanying each individual unit sold, the Pressure Cookers purport to be designed with "safety in mind and has various safety measures." Ex. A, Sunbeam Products, Inc. Crock-Pot Express Crock Multicooker Owner's Manual at 10.

18.    For instance, Defendants claim that their Pressure Cookers include "safety sensors" to keep the lid from being opened while the unit is under pressure; that "[p]ressure will not build if the Lid is not shut correctly and has not sealed"; and that "[o]nce the pressure increases, the Lid cannot be opened." Ex. A, Sunbeam Products, Inc. Crock-Pot Express Crock Multicooker Owner's Manual at 10.

19.    By reason of the forgoing acts or omissions, Plaintiff and/or his family purchased the subject pressure cooker with the reasonable expectation that it was properly designed and manufactured, free from defects of any kind, and safe for its intended, foreseeable use of cooking.

20.    Plaintiff used his pressure cooker for the intended purpose of preparing meals for himself and/or family and did so in a manner that was reasonable and foreseeable by Defendants.

21.    However, the subject pressure cooker was defectively designed and manufactured by Defendants, in that it failed to properly function to prevent the lid from being removed with normal force while the unit remained pressurized, despite the appearance that all the pressure had been released, during the ordinary, foreseeable and proper use of cooking food with the product; placing the Plaintiff, his family, and similar consumers in danger while using the Pressure Cookers.

22.    Defendants' Pressure Cookers possess defects that make them unreasonably dangerous for their intended use by consumers because the lid can be rotated and opened while the unit remains pressurized.

23.    Further, Defendants' representations about "safety" are not just misleading, they are flatly wrong and put innocent consumers like Plaintiff directly in harm's way. Economic, safer alternative designs were available that could have prevented the Pressure Cooker's lid from being rotated and opened while pressurized.

24.    As a direct and proximate result of Defendants' intentional concealment of such defects, their failure to warn consumers of such defects, their negligent misrepresentations, their failure to remove a product with such defects from the stream of commerce, and their negligent design of such products, Plaintiff used an unreasonably dangerous Pressure Cooker, which resulted in significant and painful bodily injuries upon Plaintiff's simple removal of the lid of the Pressure Cooker.

25.    Consequently, Plaintiff seeks damages resulting from the use of Defendants' Pressure Cooker as described above, which has caused Plaintiff to suffer from serious bodily injuries, medical expenses, physical pain, mental anguish, diminished enjoyment of life, and other damages.

## COUNT I: STRICT LIABILITY

26.     Plaintiff incorporates by reference each preceding and succeeding paragraph as though set forth fully at length herein.

27.     At the time of Plaintiff's injuries, Defendants' Pressure Cookers were defective and unreasonably dangerous for use by foreseeable consumers, including Plaintiff.

28.     Defendants' Pressure Cookers were in the same or substantially similar condition as when they left the possession of Defendants.

29.     Plaintiff did not misuse or materially alter the subject pressure cooker.

30.     The Pressure Cookers did not perform as safely as an ordinary consumer would have expected them to perform when used in a reasonably foreseeable way.

31.     Further, a reasonable person would conclude that the possibility and serious of harm outweighs the burden or cost of making the Pressure Cookers safe. Specifically:

    a.  The Pressure Cookers designed, manufactured, sold, and supplied by Defendants were defectively designed and placed into the stream of commerce in a defective and unreasonably dangerous condition for consumers;

    b.  The seriousness of the potential burn injuries resulting from the Pressure Cookers drastically outweighs any benefit that could be derived from their normal, intended use;

    c.  Defendants failed to properly market, design, manufacture, distribute, supply, and sell the Pressure Cookers, despite having extensive knowledge that the aforementioned injuries could and did occur;

    d.  Defendants failed to warn and place adequate warnings and instructions on the Pressure Cookers;

    e.  The Pressure Cookers designed, manufactured, sold, and supplied by Defendants were not compliant with industry standards, including UL 136 and/or UL 1026;

    f.  Defendants failed to adequately test the Pressure Cookers; and

g. Defendant failed to market an economically feasible alternative design, despite the existence of economical, safer alternatives, that could have prevented Plaintiff's injuries and damages.

32. Defendants' actions and omissions were the direct and proximate cause of Plaintiff's injuries and damages.

33. Defendants' conduct, as described above, was extreme and outrageous. Defendants risked the safety and well-being of the consumers and users of their Pressure Cookers, including Plaintiff to this action, with the knowledge of the safety and efficacy problems and suppressed this knowledge from the public. Defendants made a conscious decision not to redesign, warn or inform the unsuspecting consuming public. Defendants' outrageous conduct warrants an award of punitive damages. As such, Plaintiff reserves the right to amend his complaint to seek a claim for punitive damages, according to proof.

## COUNT II: NEGLIGENCE

34. Plaintiff incorporates by reference each preceding and succeeding paragraph as though set forth fully at length herein.

35. Defendants had a duty of reasonable care to design, manufacture, market, and sell non-defective pressure cookers that are reasonably safe for their intended uses by consumers, including Plaintiff and his family.

36. Defendants failed to exercise ordinary care in the manufacture, sale, warnings, quality assurance, quality control, distribution, advertising, promotion, sale, and marketing of their Pressure Cookers, in that Defendant knew or should have known that the Pressure Cookers created a high risk of unreasonable harm to Plaintiff and consumers alike.

37. Defendants were negligent in the design, manufacture, advertising, warning, marketing, and sale of their Pressure Cookers in that, among other things, they:

a. Failed to use due care in designing and manufacturing the Pressure Cookers to avoid the aforementioned risks to consumers;

b. Failed to adequately test the Pressure Cookers subject to the applicable industry standards, including UL 136 and/or UL 1026;

c. Placed an unsafe product into the stream of commerce;

d. Aggressively over-promoted and marketed their Pressure Cookers through television, social media, and other advertising outlets; and

e. Were otherwise careless or negligent.

38. Despite the fact that Defendants knew or should have known that consumers were able to remove the lid while the Pressure Cookers were still pressurized, Defendants continued to market their Pressure Cookers to the general public.

## COUNT III: NEGLIGENT DESIGN

39. Plaintiff incorporates by reference each preceding and succeeding paragraph as though set forth fully at length herein.

40. Defendants are the manufacturers, sellers, distributors, marketers, and suppliers of the Pressure Cookers, which were negligently designed.

41. Defendants failed to exercise reasonable care in designing, developing, manufacturing, inspecting, testing, packaging, selling, distributing, labeling, marketing, and promoting their Pressure Cookers, which were defective and presented an unreasonable risk of harm to consumers, such as Plaintiff.

42. As a result, the Pressure Cookers, including Plaintiff's pressure cooker, contain defects in their design which render them unreasonably dangerous to consumers, such as Plaintiff, when used as intended or as reasonably foreseeable to Defendants. The defect in the design allows consumers such as Plaintiff to open the lid while the unit remains pressurized, despite the

appearance that all the pressure has been released from the unit, and causes an unreasonable increased risk of injury, including, but not limited to, first, second, and third-degree scald burns.

43.    Plaintiff used his pressure cooker in a reasonably foreseeable manner and did so as substantially intended by Defendants.

44.    The subject pressure cooker was not materially altered or modified after being manufactured by Defendant and before being used by Plaintiff.

45.    The design defects allowing the lid to open while the unit was still pressurized directly rendered the Pressure Cookers defective and were the direct and proximate result of Defendant's negligence and failure to use reasonable care in designing, testing, manufacturing, and promoting the pressure cookers.

46.    As a direct and proximate result of Defendants' negligent design of their pressure cookers, Plaintiff suffered injuries and damages described herein.

### COUNT IV: NEGLIGENT FAILURE TO WARN

47.    Plaintiff incorporates by reference each preceding and succeeding paragraph as though set forth fully at length herein.

48.    At the time in which the subject pressure cooker was purchased, up through the time Plaintiff was injured, Defendants knew or had reason to know that their Pressure Cookers were dangerous and created an unreasonable risk of harm to consumers.

49.    Defendants had a duty to exercise reasonable care to warn consumers of the dangerous conditions or the facts that made their pressure cookers likely to be dangerous.

50.    As a direct and proximate result of Defendants' negligent failure to warn of the dangers of their Pressure Cookers, Plaintiff suffered injuries and damages described herein.

### COUNT V: BREACH OF IMPLIED WARRANTY OF FITNESS
### FOR A PARTICULAR PURPOSE

51.     Plaintiff incorporates by reference each preceding and succeeding paragraph as though set forth fully at length herein.

52.     Defendants manufactured, supplied, and sold their Pressure Cookers with an implied warranty that they were fit for the particular purpose of cooking quickly, efficiently, and safely.

53.     Members of the consuming public, including consumers such as Plaintiff, were the intended third-party beneficiaries of the warranty.

54.     Defendants' Pressure Cookers were not fit for the particular purpose as a safe means of cooking, due to the unreasonable risks of bodily injury associated with their use.

55.     Plaintiff reasonably relied on Defendants' representations that their Pressure Cookers were a quick, effective, and safe means of cooking.

56.     Defendants' breach of the implied warranty of fitness for a particular purpose was the direct and proximate cause of Plaintiff's injuries and damages.

### COUNT VI: BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

57.     Plaintiff incorporates by reference each preceding and succeeding paragraph as though set forth fully at length herein.

58.     At the time Defendants marketed, distributed, and sold their Pressure Cookers to Plaintiff, Defendants warranted that their Pressure Cookers were merchantable and fit for the ordinary purposes for which they were intended.

59.     Members of the consuming public, including consumers such as Plaintiff, were intended third-party beneficiaries of the warranty.

60.    Defendants' Pressure Cookers were not merchantable and fit for their ordinary purpose because they had the propensity to lead to the serious personal injuries as described herein.

61.    Plaintiff used the subject pressure cooker with the reasonable expectation that it was properly designed and manufactured, free from defects of any kind, and that it was safe for its intended, foreseeable use of cooking.

62.    Defendants' breach of the implied warranty of merchantability was the direct and proximate cause of Plaintiff's injury and damages.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against the Defendants for damages, to which he is entitled by law, as well as all costs of this action, interest and attorneys' fees, to the full extent of the law, whether arising under the common law and/or statutory law, including:

a.  judgment for Plaintiff and against Defendants;

b.  damages to compensate Plaintiff for his injuries, economic losses and pain and suffering sustained as a result of the use of the Defendants' Pressure Cookers;

c.  pre and post judgment interest at the lawful rate;

d.  a trial by jury on all issues of the case;

e.  an award of attorneys' fees; and

f.  for any other relief as this Court may deem equitable and just, or that may be available under the law of another forum to the extent the law of another forum is applied, including but not limited to all reliefs prayed for in this Complaint and in the foregoing Prayer for Relief.

Respectfully submitted,

Dated: January 13, 2025

/s/ Teague Westrope, Esq.
Teague Westrope, Esq.
AVA LAW GROUP, PLLC
2718 Montana Ave. Suite 220
Billings, MT 59101
(406) 295-8689

12

**JOHNSON BECKER, PLLC**

Adam J. Kress, Esq.
(MN ID #0397289)
*Pro Hac Vice to be filed*
444 Cedar Street, Suite 1800
St. Paul, MN 55101
(612) 436-1800
akress@johnsonbecker.com

*Attorneys for Plaintiff*